# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN HICKMAN, ) | |
|     ID # 01668998 ) | |
|         Petitioner, ) | |
| vs. ) | No. 3:15-CV-1979-K-BH |
| ) | |
| LORIE DAVIS, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|         Respondent. ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

### I. BACKGROUND

Christopher Allen Hickman (Petitioner) challenges his convictions for aggravated robbery. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

On August 11, 2009, the State indicted Petitioner for aggravated robbery in Nos. F-09-13247 and F-09-13248. (Doc. 16-5 at 6; doc. 16-6 at 5[1].) The cases were consolidated for proceedings in the trial court. (Doc. 16-5 at 14.)

### A. **Motion to Withdraw**

On May 17, 2010, (doc. 16-5 at 33), two weeks before trial, Petitioner's appointed counsel moved to withdraw from the case, and the trial court held a hearing on the motion on that same date. (doc. 16-5 at 33; doc. 16-10 at 8-9.) The motion alleged that Petitioner would not cooperate or discuss the case with counsel, and that he had filed a grievance against counsel. (Doc. 16-5 at 33.)

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

At the hearing, Petitioner testified that counsel had not been working with him and did not communicate with his family, and that he was trying to hire another attorney. (Doc. 16-10 at 5-7.) The court explained that trial was set to begin in two weeks, Petitioner had been in jail for one year, and the case would not be reset on the basis of new counsel. (*Id*. at 7-9.) It told Petitioner that he could go to trial with appointed counsel or with new counsel who would only have two weeks to prepare, and suggested that he work with appointed counsel. (*Id*. at 8, 10.) The court denied the motion to withdraw and stated that appointed counsel would continue to represent Petitioner unless he hired new counsel who would try the case within two weeks. (*Id*. at 11.)

Also at the hearing, Petitioner was informed that he was not eligible for probation. (*Id*.) The State set out its plea offer, but he rejected it. (*Id*. at 15-17.)

**B.    Guilty Pleas and Sentencing**

On August 20, 2010, Petitioner pled guilty in both cases without an agreement on the sentences. (Doc. 16-5 at 56; doc. 16-6 at 23; doc. 16-13.) He was admonished in the plea documents and at the plea hearing about the range of punishment and his rights. (Doc. 16-5 at 57-58; doc. 16-6 at 24-25; doc. 16-13 at 8.) The plea documents informed him about "unadjudicated community supervision," which is deferred adjudicated probation or community supervision. (Doc. 16-5 at 57; doc. 16-6 at 24.) The court told him he could be placed on deferred adjudication. (Doc. 16-13 at 5.) He waived his rights, pled guilty, and acknowledged that his pleas were voluntary. (Doc. 16-5 at 58; doc. 16-6 at 25; doc. 16-13 at 8-9.) At the plea hearing, he said that he was not forced to plead guilty. (Doc. 16-13 at 12.) He said that counsel was yelling at him because he would not take the plea offer, and counsel disagreed that he was yelling. (*Id*.) Petitioner admitted that counsel said that he could go to trial, enter open pleas of guilty, or accept the State's plea offer,

2

and that counsel would do whatever he wanted regarding the pleas. (*Id*.) Petitioner chose to enter open pleas of guilty. (*Id*.) He judicially confessed to committing the offenses. (Doc. 16-5 at 60; doc. 16-6 at 27.) The court accepted the guilty pleas, found the evidence was sufficient to substantiate a finding of guilt, and deferred making a finding of guilt until sentencing. (Doc. 16-13 at 14.)

The sentencing hearing was held on September 7, 2010. (Doc. 16-14.) Petitioner testified at length that he committed the crimes because of drugs and about his need for help with his drug and alcohol addiction. (Doc. 16-14 at 92-94, 96, 120-21.) He said that prison would not help him rehabilitate from his drug abuse. (*Id*. at 93.) Counsel argued for "a type of probation to allow him treatment and . . . to allow [the court] to continually, for the next ten years, have the opportunity, essentially, to put him away for the rest of his life if he doesn't comply." (*Id*. at 123-24.) The State argued for a "long sentence in the Texas Department of Corrections." (*Id*. at 126.) The court imposed a 30-year sentence in each case, with the sentences to run concurrently. (Doc. 16-5 at 64; doc. 16-6 at 30.)

**C.**     **Post-Conviction Proceedings**

On appeal, the judgment in No. F-09-13247 was reformed to omit the requirement that Petitioner pay attorney fees, and both judgments were affirmed. *Hickman v. State*, Nos. 05-10-01250-CR, 05-10-01251-CR (Tex. App. – Dallas July 29, 2013); (doc. 16-3 at 3). He did not file petitions for discretionary review. (Doc. 22-1 at 2.)

Petitioner's state habeas applications, signed on March 7, 2014, were received by the state court on March 24, 2014. (Doc. 16-17 at 5, 16, doc. 16-21 at 6, 17.) On October 29, 2014, the Texas Court of Criminal Appeals denied the application for No. F-09-13248 without written order

on the findings of the trial court without a hearing. (Doc. 16-16); *see Ex parte Hickman*, No. WR-82,298-01 (Tex. Crim. App. Oct. 29, 2014). On December 17, 2014, the Texas Court of Criminal Appeals denied the application for No. F-09-13247 without written order. (Doc. 16-18); *see Ex parte Hickman*, No. WR-82,298-02 (Tex. Crim. App. Dec. 17, 2014).

D.     **Substantive Claims**

Petitioner's habeas petition, mailed on May 27, 2015, and filed on June 9, 2015, and his amended petition, filed on January 4, 2016, raise the following grounds:

(1) The prosecutor made prejudicial comments during closing argument at the sentencing proceeding;

(2) Counsel was ineffective for failing to present the presentence investigation report and a "cats" evaluation during sentencing;

(3) There was a conflict of interest because counsel yelled at Petitioner for not wanting to accept a plea agreement;

(4) The trial court erred in denying counsel's motion to withdraw;

(5) The guilty pleas were involuntary because counsel told him he would receive probation or treatment and the trial court improperly admonished him that he could receive probation.

(Doc. 3 at 6-7; doc. 17.)

Respondent filed a response to the petition on February 5, 2016. (Doc. 22.) Petitioner filed a reply on May 9, 2016. (Doc. 36.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

4

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the

5

'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. STATUTE OF LIMITATIONS

One of the major changes made to the way federal courts handle habeas corpus actions by AEDPA is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See id.* § 2244(d)(1)(A)-(D).

The facts supporting Petitioner's claims regarding No. F-09-13248 either became known or could have become known prior to the date his judgment became final. The one-year statute of limitations is therefore calculated from the date his conviction became final.

Petitioner did not file a petition for discretionary review with the Court of Criminal Appeals. His state conviction therefore became final for purposes of § 2244(d) by the expiration of the thirty-day period for filing a petition for discretionary review after his conviction was affirmed on direct appeal. *See Roberts v. Cockrell*, 319 F.3d 690, 694 n.24 (5th Cir. 2003) (under Tex. R. App. P. 68.2 a party has thirty days to file a petition for discretionary review). The appellate court opinion was issued on July 29, 2013, the thirtieth day after was August 28, 2013, so the one-year limitations period ended on August 28, 2014. Petitioner filed this § 2254 petition on May 27, 2015, the date it was mailed. (doc. 3 at 10).[1] A literal application of § 2244(d)(1)(A) renders the § 2254 petition untimely.

## A. **Statutory Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). Petitioner's state habeas applications were signed and deemed mailed on March 7, 2014. The application for No. F-09-13248 was denied on October 29, 2014. The limitations period was tolled for 237 days while that application was pending, which made the § 2254 petition for that case due no later than April 22, 2015. The § 2254 petition was filed on May 27, 2015, when it was mailed, which was over one month after the limitations period expired. Statutory tolling

---

[1] *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

therefore does not save the claims regarding No. F-09-13248.

The state habeas application for No. F-09-13247 was denied on December 17, 2014, and it was pending for 286 days, which made the § 2254 petition for that case due on June 10, 2015. Because the § 2254 petition was filed on May 27, 2015, statutory tolling saves the claims regarding No. F-09-13247, and they are deemed timely.

**B.** <u>**Equitable Tolling**</u>

AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 560 U.S. 631 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing. *Holland*, 560 U.S. at 649, citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The Fifth Circuit has also stated that when a prisoner contends that his

ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman*, 184 F.3d at 402.

Here, Petitioner presents no argument or evidence that he was prevented from filing his state writ or his federal petition earlier. He has failed to meet his burden to show that he is entitled to any equitable tolling of the federal statute of limitations for No. F-09-12348, and his claims regarding No. F-09-12348 are barred by the statute of limitations.

## IV. EXHAUSTION AND PROCEDURAL BAR

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust under § 2254, he must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. A petitioner must also present his claims in a procedurally correct manner. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would

9

be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

Petitioner did not raise his claims about the prosecutor's comments, ineffective assistance of counsel for failing to present the presentence investigation report and a "cats" evaluation at sentencing, conflict of interest based on counsel's yelling at him for not accepting the plea agreement, and involuntary pleas based on the trial court's improper admonishment that he could be placed on probation in a PDR; he did not file one. He also did not raise those claims in his state habeas applications. (*See* doc. 16-17 at 10-11; doc. 16-21 at 11-12.) His state habeas applications alleged that counsel was ineffective for inducing him to plead guilty by promising he would receive drug treatment instead of a prison sentence. (*See* doc. 16-17 at 10; doc. 16-21 at 11.) He claimed that the trial court erred in denying counsel's motion to withdraw due to a conflict of interest, but he did not claim that there was a conflict of interest because counsel yelled at him for not wanting to accept a plea agreement, as he alleges in his federal petition. (*See* doc. 16-17 at 11; doc. 16-21 at 12.) His federal claims regarding the prosecutor's comments, ineffective assistance of counsel, conflict of interest, and involuntary pleas based on improper admonishments are unexhausted. He would be barred from raising these claims in a successive state habeas application, so the claims are also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

## V. VOLUNTARINESS OF PLEAS

Petitioner contends that his guilty pleas were involuntary because counsel told him he would receive probation or treatment and, although he was ineligible for probation, he was admonished that he could receive probation.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S.

622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not

11

adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A.  **Alleged Promise of Treatment or Probation**

Counsel submitted an affidavit that stated:

12

> I discussed the facts of his case with him many times, I also explained all his rights that he has in the cases and his choices of how he can handle his cases. These choices I explained was he could enter a plea of not guilty and have a trial either by Jury or Judge, enter a plea of guilty with no plea bargain agreement and have either the Jury or Judge decide his punishment, or enter a plea of guilty and accept what sentence the State was recommending. I never promised him the judge would give him treatment and he made the decision to enter into an open plea to the court knowing the court could assess any sentence within the law. He never indicated to me or the trial court that he was being forced into doing this. Mr. Hickman was aware of the consequences of going to trial and chose to accept going open to the court rather than face the potential of a substantially higher sentence with the maximum possibility being 99 years or life confinement. I did not force, coerce or induce Mr. Hickman to do anything.

(Doc. 16-17 at 77-78.) The state habeas court believed counsel and found that Petitioner did not demonstrate that his pleas were involuntary. (*Id*. at 55-58.)

Petitioner has not shown that counsel told him he would receive probation or treatment. The plea documents and his testimony at the plea hearing show that his pleas were voluntary. He has not overcome the "strong presumption of verity" given to his sworn testimony and the "great weight" accorded to court documents. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). Petitioner has not shown that the state court's rejection of this claim was unreasonable.

**B.** **<u>Admonishments Regarding Probation</u>**

As discussed, Petitioner's claim that his pleas were involuntary because the court admonished him that he could receive probation although he was not eligible for probation, is

13

unexhausted and procedurally barred. The claim also lacks merit.

Petitioner was not eligible for regular probation for aggravated robbery. Tex. Code Crim. Proc. art. 42.12, § 3g(a)(1)(F); *see Hampton v. State*, 435 S.W.3d 303, 307 (Tex. App. – Houston [1st Dist.] 2014). He was eligible for deferred adjudication probation, however. Tex. Code Crim. Proc. art. 42.12, § 5(d); *Hampton*, 435 S.W.3d at 307. He was informed that he was ineligible for probation (doc. 16-10 at 11), but that he was eligible for deferred adjudication (doc. 16-5 at 57; doc. 16-6 at 24; doc. 16-13 at 5). He has not shown that he was improperly admonished about probation or deferred adjudication probation.

## VI. DENIAL OF MOTION TO WITHDRAW

Petitioner contends the trial court erred in denying counsel's motion to withdraw. At the hearing, he asserted that counsel did not work with him and did not communicate with his family. Petitioner stated that he was seeking to hire counsel to replace appointed counsel only two weeks before trial was to begin.

> [A] defendant is not absolutely entitled to his counsel of choice. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ( "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). In the Sixth Amendment context, "last minute requests" to retain new counsel are not only "disfavored," *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980), but also routinely denied, *see, e.g.*, *Newton v. Dretke*, 371 F.3d 250, 256 (5th Cir. 2004) (collecting cases).

*United States v. Smith*, 839 F.3d 456, 458 (5th Cir. 2016).

The trial court did not deny Petitioner the opportunity to retain new counsel. The court told him that any attorney he hired would need to be ready for trial as scheduled. Petitioner did not identify any constitutional basis for the dismissal of appointed counsel. He has not shown that the state court's rejection of this claim was unreasonable.

14

## VII.  PROSECUTOR'S CLOSING ARGUMENT

Petitioner contends that the prosecutor's argument at sentencing for a long sentence was improper.  As discussed, this claim is unexhausted and procedurally barred, but it also lacks merit.

Improper prosecutorial argument violates a criminal defendant's constitutional rights only when the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986).  Comments that do not manipulate or misstate the evidence do not deprive a defendant of a fair trial.  *Darden*, 477 U.S. at 181.  The prosecutor's argued for a "long sentence in the Texas Department of Corrections" did not deprive Petitioner of a fair trial.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends counsel was ineffective for failing to present the presentence report and a "cats" evaluation during sentencing.  He also claims that counsel had a conflict of interest because he yelled at him for not accepting the State's plea offer.  As discussed, these claims are unexhausted and procedurally barred, but they also lack merit.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

To successfully state a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong

of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Although the *Strickland* test ordinarily applies to claims of ineffective assistance of counsel, Petitioner's claim is grounded on an alleged conflict of interest. Because these types of ineffective assistance claims are reviewed under different standards, the Court must initially determine whether Petitioner's claim changes the applicable standard of review.

**A.     Conflict of Interest**

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980), provides the applicable standard for evaluating claims of ineffective assistance of counsel. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice. *Id*. at 781–82. "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions: (1) whether there was an actual conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). The Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether

16

it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir.2002); *Beets v. Scott*, 65 F.3d 1258, 1270–72 (5th Cir. 1995). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See Beets*, 65 F.3d at 1272.

Here, Petitioner contends that counsel had a conflict of interest because he yelled at him for not accepting the plea offer. Because the alleged conflict is premised on a conflict between counsel's interests and those of Petitioner, rather than between the interests of multiple clients, *Strickland* provides the proper standard of review, and prejudice is not presumed. *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270–72.

**B.** *Strickland*

To determine whether counsel's performance is constitutionally deficient under *Strickland*, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." 466 U.S. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. A petitioner must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain federal habeas relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

With regard to Petitioner's claim that counsel yelled at him for not accepting the plea offer, he admitted that counsel told him that he could go to trial, enter open pleas of guilty, or accept the State's plea offer, and that counsel would do whatever Petitioner wanted. (Doc. 16-13 at 12.) He chose to enter open pleas of guilty. (*Id.*) Even if counsel yelled at him for not accepting the plea offer, Petitioner has not shown deficiency or prejudice; he entered open pleas of guilty as he wanted.

As for the presentence report, counsel referred to it at the sentencing hearing. (Doc. 16-7 at 3; doc. 16-9 at 3; doc. 16-14 at 7.) Petitioner was aware that the court would read the report. (Doc. 16-14 at 117.) He has not shown that the trial court was unaware of the report or that counsel was ineffective for failing to present it. He also does not allege the substance of any "cats" evaluation. He has not alleged that any such evidence would have been favorable and would have

18

affected the sentence. Petitioner has not shown that he received ineffective assistance of counsel.

## IX. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## X. RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 15th day of May, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE